OPINION
Defendant-appellant Carla Oliger appeals her conviction and sentence from the Licking County Municipal Court on one count of failure to confine a dangerous dog in violation of R.C. 955.22(D). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 9, 1998, Jon Luzio, the Licking County Dog Warden, filed a complaint against appellant in the Licking County Municipal Court charging appellant with failure to confine a dangerous dog in violation of R.C.955.22(D)(2) as a result of an incident that occurred on June 10, 1998. After appellant, on September 23, 1998, entered a plea of not guilty to the charge, a bench trial before Judge Thomas M. Marcelain was held on November 30, 1998. The following evidence was adduced at trial. On June 10, 1998, Ruth Bierly, who was appellant's neighbor at the time and had known her for approximately one year, was bitten on the upper part of her leg by one of appellant's dogs, a Rottweiler mix, while she was weeding near her garage. When asked how she knew that the dog belonged to appellant, Bierly testified that appellant either kept the dog tied up in appellant's yard or let it run loose. The same day, Bierly, who had personally observed the tooth marks on her leg, received medical attention for the bite and also contacted the police and the dog warden. Bierly then filed a complaint with the Newark Police Department. Jon Luzio, the Licking County Dog Warden, testified at trial that when he arrived at appellant's residence on June 10, 1998, to take temporary control of appellant's dog, the dog bared its teeth when appellant's babysitter, her thirteen year old daughter, brought the dog out to him. Luzio, who had been at appellant's residence on prior occasions, was told by appellant's daughter that children had let the dog out of appellant's house. Appellant, however, testified that it was physically impossible for her dog to have left the premises on June 10, 1998, at any time since she was gone from her house only 15 minutes on such date. Appellant's daughter also testified that the dog was not let out of the house at all during the short period that her mother was gone. Following Bierly's testimony, Toby Wills, the Deputy Dog Warden, testified that previously, on April 20, 1998, he, along with the Chief Deputy Dog Warden had responded to a call that a Rottweiler mixed breed dog was running loose. The dog was appellant's. When the two arrived at appellant's home, the dog approached them in a menacing fashion, growled, and attempted to bite them. After they were unable to catch the dog, the two left. Wills testified that when he later spoke to appellant on April 23, 1998, he told her that her dog had charged at him and that she had to keep the dog confined. After considering the testimony presented at trial, the trial court found appellant guilty of failure to confine a dangerous dog in violation of R.C. 955.22(D), fined her $150.00, ordered her to pay court costs, sentenced her to ten days in jail, and ordered her to obtain liability insurance. The trial court, however, suspended appellant's jail time and placed her on probation for one year. Appellant also was ordered to personally supervise her dog. Appellant's sentence was memorialized in a Journal Entry filed on November 30, 1998. It is from the November 30, 1998, Entry that appellant prosecutes her appeal. On February 24, 1999, appellant filed a Motion to Enter Evidence with an attached brief. Pursuant to a Judgment Entry filed on March 12, 1999, this court held that it would consider the documents filed by appellant on February 24, 1999, as appellant's brief. Since appellant has not set forth her assignments of error in the standard manner, this court shall attempt to discern the nature of appellant's arguments. Appellant, in her assignments of error, appears to argue that her conviction for violating R.C. 955.22(D), failure to confine a dangerous dog, is not supported by sufficient evidence and is against the manifest weight of the evidence. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational tier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction for violating R.C. 955.22(D)(2), failure to confine a dangerous dog, was based upon insufficient evidence. Such section states, in relevant part, as follows: "No owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following. . . . (2)While that dog is off the premises of the owner, keeper, or harborer, keep it on a chain-link leash or tether that is not more than six feet in length and additionally do at least one of the following: (a) Keep that dog in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top; (b) Have the leash or tether controlled by a person who is of suitable age and discretion or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person: (c) Muzzle that dog.
A "dangerous dog" is defined as meaning "a dog that, without provocation, and subject to division (A)(1)(b) of this section, "has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while the dog is off the premises of its owner, keeper, or harborer and not under the reasonable control of its owner, keeper, harborer, or some other responsible person, or not physically restrained or confined in a locked pen which has a top, locked fenced yard or other locked enclosure which has a top." R.C.955.11(A)(1)(a). At the trial on November 30, 1998, Mrs. Bierly testified that she was bitten by appellant's dog while she was on her own property. Jon Luzio further testified that, when he took appellant's dog over to Mrs. Bierly's home, she "positively identified the dog as the one that attached [sic] her probably a half hour previously." Transcript of Proceedings at 24. Appellant's dog, therefore, was not kept on a leash or tether while off of appellant's premises. Nor did appellant, as owner of such dog, meet any of the alternative requirements listed above in R.C.955.22(D)(2)(a)-(c). That appellant's dog fits within the definition of a "dangerous dog" is established by the testimony of Deputy Dog Warden Toby Wills, who testified that when he went to appellant's house on April 20, 1998, in response to a call that a dog was running loose, appellant's dog approached him and the Chief Deputy Dog Warden in an aggressive manner without provocation and that the dog came running and growling at them. Wills further testified that when he spoke with appellant on April 23, 1998, he advised her that her dog had charged at them and told her that she had to keep the dog confined. He had testified in a similar manner at appellant's trial on June 9, 1998, in case No. 98CRB699, the day before Bierly was bitten. Appellant, therefore, had notice that her dog was dangerous. The court finds, based on the foregoing, that after viewing the evidence in a manner most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of the crime of failure to confine a dangerous dog proven beyond a reasonable doubt. The trial court, therefore, did not err in finding appellant guilty of violating R.C. 955.22(D) because there was sufficient evidence supporting her conviction. Appellant also appears to assert that her conviction is against the manifest weight of the evidence. Appellant specifically challenges the credibility of the State's witnesses and the alleged inconsistencies between the written statements of certain witnesses and their sworn verbal testimony at trial and alleged inconsistencies between the testimony given by certain witnesses in this case and that given in case number 98CRB00699, appellant's previous dog running at large case. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1. Appellant's counsel, at trial, did not call the trier of fact's attention to any of the inconsistencies pointed out in appellant's brief. Moreover, the trial judge, as trier of fact, had the opportunity to observe the witnesses' demeanor including that of appellant herself, and weigh their credibility. Clearly, while the trial court found the testimony of Bierly, Wills and Luzio, the State's witnesses, to be credible, it found that of appellant and her daughter, the only defense witnesses, to be lacking in credibility. After examining the entire record, this court cannot say that the trial judge, as trier of fact, clearly lost his way and created a manifest miscarriage of justice. The trial court, therefore, did not err in finding appellant guilty of violating R.C.955.22(D). As one of her assignments of error, appellant also argues that the trial court erred in finding her guilty of violating R.C.955.22 because her dog was not found to be a "vicious dog" in her previous case, case number 98CRB699. However, in case number 98CRB699, appellant was charged with one count of having a dog running at large and three counts of not having licenses for her three dogs. At no point during such case was the issue of whether or not appellant's Rottweiler mix was a vicious dog addressed. Moreover, appellant, in this case, was not charged with failure to confine a vicious dog, but rather with failure to confine a dangerous dog. It is such charge that appellant's trial counsel defended her against. Finally, appellant also asserts that she was harassed by the filing of this case and case number 98CRB699 and that there was collusion between the State, the court, the police, and the State's witnesses. However, appellant presented the trial court with no evidence that the proceedings were filed for the purposes of harassing her and/or that there was history of harassment by the Bierlys against appellant. Therefore, there is no way for this court to know whether there has been an ongoing history of harassment and whether knowledge of that by the trial court would have effected the trial court's assessment of the credibility of the witnesses presented by the State. Furthermore, upon review of the record, the court finds that appellant has presented no evidence of any collusion. While appellant submits as proof of harassment and/or collusion the fact that her witnesses were not notified of the rescheduled trial date of November 30, 1998, the only praecipe for subpoena filed by appellant's counsel was for the original trial date of October 21, 1998. No additional praecipes were filed requesting that subpoenas be issued for the November 30, 1998, trial date. The appellant alleges in her reply brief that a local police officer and a local prosecuting attorney went to high school together, are close friends and have known the Bierlys for years. The appellant alleges that these relationships have resulted in collusion and that that collusion explains why complaints brought by the appellant against the Bierlys have not been prosecuted. None of these matters were developed in the trial court. In short, this court finds appellant's allegations of harassment and collusion to be unsupported by evidence and/or unfounded.
All of appellant's assignments of error are denied. The judgment of the Licking County Municipal Court is affirmed.
By Edwards, J. Gwin, P.J. and Farmer, J. concur